# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MARTINEZ,<br><br>                                Petitioner,<br>    vs.<br>ERIC HOLDER, Attorney General,<br><br>                                Respondent. | CASE NO. 11-cv-402 – IEG (JMA)<br><br>ORDER DENYING AND DISMISSING PETITION |

On February 25, 2011, Petitioner Victor Martinez filed the present Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, alleging that he was being detained by the Department of Homeland Security ("DHS") without a bond hearing pending removal and seeking release from custody because his detention has become indefinite. [Doc. No. 1.] On June 3, 2011, the Court ordered the Immigration Court of El Centro, California to provide Martinez with a bond hearing pursuant to *Casas-Castrillon v. D.H.S.*, 535 F.3d 942 (9th Cir. 2008), and *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008). [Doc. No. 17.] On June 16, 2011, an Immigration Judge ("IJ") conducted a bond hearing as ordered. On July 20, 2011, the IJ issued a decision finding Martinez to be a danger to the community and denying his request for release. [Doc. No. 21-1.] In light of the bond hearing, the Court issued an Order to Show Cause Why the Petition Should Not Be Denied as Moot. [Doc. No. 28.] Martinez filed a timely response on November 14, 2011. [Doc. No. 31.] Having considered the respective arguments, and for the reasons set forth below, the Court hereby **DENIES and DISMISSES** the Petition.

**BACKGROUND**

Martinez is a native and citizen of Ecuador. He immigrated to the United States on July 19, 1970 as a lawful permanent resident. All of his close family is currently in the United States. Martinez has generally worked as a truck driver and as a cashier. He admits to having a mental health problem, whereby he hears voices, and an alcohol problem. Originally, the voices told him to take things, which led to numerous theft related convictions. The voices now sound like his mother and daughter and urge him for help. According to Martinez, the medicines he was prescribed do not appear to control the voices and, as a result, he stopped taking those medicines.

Martinez has a lengthy criminal history. He had been sentenced to state prison five or six times, most recently in May 2009 for petty theft with priors. [Doc. No. 9-1, at 8-9; Doc. No. 21-1, at 5.] Martinez claims his bad conduct is the result of his alcoholism and mental health disease.

Martinez also has a very lengthy and convoluted immigration history. As relevant here, in September of 2002, the Immigration and Naturalization Service ("INS") placed Martinez in removal proceedings, charging him with removability for an aggravated felony and convictions of crimes involving moral turpitude. On November 5, 2002, an IJ ordered Martinez removed to Ecuador. The BIA summarily affirmed on July 30, 2003, and Martinez sought direct review by the Ninth Circuit. The Ninth Circuit ultimately remanded on December 20, 2007, finding that Martinez's 1996 burglary conviction did not qualify as an aggravated felony. On May 23, 2008, the BIA remanded the proceedings to the IJ. [*See* Doc. No. 9-1, at 13-14.]

While the above appeals were ongoing, Martinez filed a habeas petition challenging the legality of his detention. *See Martinez v. Gonzalez*, 504 F. Supp. 887, 890 (C.D. Cal. 2007). Pursuant to District Judge Hatter's order, a bond hearing was conducted before an IJ, who ordered Martinez released on a $10,000 bond in a written decision dated February 8, 2007. *Id.* at 891. Martinez posted the bond and was released on February 12, 2007. *Id.* On August 17, 2007, the district court granted Martinez's habeas petition, finding that Martinez's continued detention was not authorized by statute and that he therefore was entitled to release. *Id.* at 900.

On November 19, 2009, the DHS again took Martinez into custody and removal proceedings were re-opened. [Doc. No. 9-1, at 8-11.] On November 16, 2010, the IJ ordered

1  Martinez removed to Ecuador, finding that he was not entitled to any relief from removal or
2  voluntary departure. [*Id.* at 18-27.] The BIA upheld the IJ's removal order on March 4, 2011.
3  [*Id.* at 31-32.] On February 3, 2011, the BIA also upheld the IJ's December 9, 2010 decision that
4  Martinez was not entitled to a *Casas* bond hearing. [*Id.* at 28-30.] Martinez sought Ninth Circuit
5  review of the BIA's affirmance of the removal order, and those proceedings are still ongoing. *See*
6  *Martinez v. Holder*, No. 11-70751 (9th Cir. filed Mar. 15, 2011). An interim stay of removal was
7  initially automatically issued pursuant to the Ninth Circuit General Order 6.4(c)(1). However, on
8  August 9, 2011, in a brief order, the Ninth Circuit denied Martinez's motion to stay removal
9  pending appeal, citing *Nken v. Holder*, 129 S. Ct. 1749 (2009), and *Leiva-Perez v. Holder*, 640
10 F.3d 962 (9th Cir. 2011) (per curiam). [Case No. 11-70751, Dkt. No. 12 (9th Cir.).]

11    Martinez filed the present Petition on February 25, 2011. [Doc. No. 1.] Respondent filed a
12 return to the Petition on April 8, 2011, and Martinez filed a traverse on April 28, 2011. [Doc. Nos.
13 9, 11.] On June 3, 2011, the Court ordered that Martinez receive a *Casas* bond hearing before an
14 IJ. [Doc. No. 17.] That hearing was conducted on June 16, 2011, and on July 20, 2011, the IJ
15 issued a written decision finding Martinez to be a danger to the community and denying his
16 request for release. [Doc. No. 21-1.] On October 7, 2011, in light of the bond hearing, the Court
17 issued an Order to Show Cause Why the Petition Should Not Be Denied as Moot. [Doc. No. 28.]
18 Martinez filed a timely response on November 14, 2011. [Doc. No. 31.] The Court is issuing this
19 order without oral argument pursuant to the Civil Local Rule 7.1(d)(1).

20                                    **DISCUSSION**

21 **I.    Statutory authority for Martinez's *current* detention**

22    Martinez challenges the legality of his detention and seeks release pending removal. The
23 initial question the Court has to resolve is pursuant to which statutory authority Martinez is being
24 *presently* detained. As the Ninth Circuit has recognized, "[t]he statutory scheme governing the
25 detention of [aliens such as Martinez] is not a model of clarity." *See Prieto-Romero*, 534 F.3d at
26 1058. Martinez is either detained under 8 U.S.C. § 1231(a), which governs detention "during" and
27 "beyond" the removal period, or under 8 U.S.C. § 1226(a), which permits detention "pending a
28 decision on whether the alien is to be removed from the United States." "The distinction has real

1 consequences for the alien, because detention under § 1231(a)(2), for example, is mandatory but
2 limited to a set period of time, whereas detention under § 1226(a) is discretionary and the
3 necessity of detention can be reviewed by an IJ and the BIA." *Prieto-Romero*, 534 F.3d at 1059.
4 An alien detained under § 1231(a), unlike an alien detained under § 1226(a), cannot obtain a bond
5 hearing before an IJ. *See id.* at 1059 n.4 (citing 8 C.F.R. § 236.1(c)(8)). *But see Diouf v. Mukasey*,
6 542 F.3d 1222, 1233-35 (9th Cir. 2008) (reserving this specific question for later determination).

7 Another wrinkle facing the Court is that detention authority is not static; rather, "the
8 Attorney General's authority over an alien's detention shifts as the alien moves through different
9 phases of administrative and judicial review." *Casas-Castrillon*, 535 F.3d at 945. This makes the
10 task of determining where an alien falls within the statutory scheme particularly difficult for the
11 Court because, as the Ninth Circuit has explained, the Attorney General's authority over the alien
12 presents "a moving target." *Id.* at 945-46. Thus, the Attorney General's authority over the alien at
13 the time the habeas petition is filed may differ from the authority at the time the Court issues its
14 order, which in turn may differ from the authority at the time the Court of Appeals hears oral
15 argument on appeal. *Id.* at 946. Martinez's own case presents this problem.

16 It appears that when Martinez was first taken into custody as an alien who has committed
17 two or more crimes involving moral turpitude, [*see* Doc. No. 9-1, at 8-11], he was subject to
18 mandatory detention. *See* 8 U.S.C. § 1226(c)(1)(B) ("The Attorney General *shall* take into
19 custody any alien who . . . is deportable by reason of having committed any offense covered in
20 section 1227(a)(2)(A)(ii) . . . of this title." (emphasis added)). The Attorney General may release
21 an alien detained under § 1226(c) only for narrow reasons not implicated here. *See id.* §
22 1226(c)(2).

23 After the BIA affirmed Martinez's order of removal and the Ninth Circuit entered an
24 interim stay of removal, the Attorney General's authority to detain Martinez changed. As the
25 Ninth Circuit explained in *Prieto-Romero* and *Casas-Castrillon*, once an alien's order of removal
26 becomes administratively final and the court of appeals enters a stay of removal, the authority to
27 detain the alien shifts to § 1226(a), which allows the Attorney General to detain any alien
28 "pending a decision on whether the alien is to be removed from the United States." *See Casas-*

*Castrillon*, 535 F.3d at 948; *Prieto-Romero*, 534 F.3d at 1059. An alien held under § 1226(a) is entitled to a bond hearing before an IJ. *See Casas-Castrillon*, 535 F.3d at 951.

The problem, however, is that on August 9, 2011, while this habeas petition was pending, the Ninth Circuit in a brief order denied Martinez's motion for stay of removal. [*See* Case No. 11-70751, Dkt. No. 12 (9th Cir.).] As a result, it appears that Martinez entered his "removal period" at that time. *See Casas-Castrillon*, 535 F.3d at 947 ("If an alien has filed a petition for review with this court and received a judicial stay of removal, the 'removal period' under § 1231(a) does not begin until this court 'denies the petition and withdraws the stay of removal.'" (quoting *Prieto-Romero*, 534 F.3d at 1059)); *Prieto-Romero*, 534 F.3d at 1059 n.5 ("[I]f an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay *or* (2) grants the motion *and* finally denies the petition for review."). Accordingly, it appears that at that time the statutory authority for Martinez's detention has changed once more—this time to 8 U.S.C. § 1231(a).[1] *See* 8 U.S.C. § 1231(a)(2) ("*During the removal period*, the Attorney General *shall* detain the alien." (emphases added)); *see also id.* § 1231(a)(1)(B) ("The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. . . . .").

## II.     Detention authority under 8 U.S.C. § 1231(a)

Assuming Martinez's removal period commenced on August 9, 2011, upon the Ninth Circuit's denial of his motion for stay of removal, it appears the Court must dismiss the Petition.

Detention "during" the removal period is governed by § 1231(a)(2) and is limited to ninety days. Detention "beyond" the removal period is governed by § 1231(a)(6). In *Zadvydas v. Davis*,

---

[1] It is possible, however, to read § 1231(a)(1)(B) as providing that once the Court of Appeals *grants* a stay of removal, the removal period does not begin *even if* the stay is later denied. In other words, if the alien seeks judicial review *and* the Ninth Circuit enters a stay of removal, the removal period begins *only* as of "the date of the court's final order," regardless of whether the stay of removal has been denied in the interim. *See* 8 U.S.C. § 1231(a)(1)(B)(ii) ("The removal period begins on the latest of the following: . . . If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."). If the removal period has not began yet, then Martinez's detention would continue to be governed by § 1226(a). *See Casas-Castrillon*, 535 F.3d at 948; *Prieto-Romero*, 534 F.3d at 1059. As such, in the abundance of caution, the Court will analyze Martinez's petition under both § 1231(a) and § 1226(a).

1  533 U.S. 678 (2001), the Supreme Court addressed the question of whether § 1231(a)(6) could
2  justify a prolonged or indefinite detention. The Supreme Court held that "[a] statute permitting
3  indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S.
4  at 690. However, "interpreting the statute to avoid a serious constitutional threat," the Supreme
5  Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no
6  longer authorized by statute." *Id.* at 699. Addressing the 90-day period contained in §
7  1231(a)(1)(A), the Supreme Court accepted as given that mandatory detention during that period
8  was presumptively reasonable. *See id.* at 683 ("After entry of a final removal order and during the
9  90-day removal period . . . aliens must be held in custody."); *see also* 8 U.S.C. § 1231(a)(2)
10 ("During the removal period, the Attorney General shall detain the alien. Under no circumstance
11 during the removal period shall the Attorney General release an alien who has been found
12 inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section
13 1227(a)(2) or 1227(a)(4)(B) of this title."). The Ninth Circuit went further, holding that a habeas
14 petition filed during the 90-day removal period poses no due process issues and must be dismissed.
15 *See Khotesouvan v. Morones*, 386 F.3d 1298, 1299-1301 (9th Cir. 2004).

16     In the present case, it is unclear whether the Ninth Circuit's decision in *Khotesouvan*
17 governs Martinez's habeas petition. On the one hand, while Martinez's petition was pending
18 before the Court, Martinez arguably entered his removal period. Detention during that period is
19 mandatory and poses no due process issues. *See* 8 U.S.C. § 1231(a)(2); *Khotesouvan*, 386 F.3d at
20 1299-1301. Accordingly, if *Khotesouvan* governs, the Court is required to dismiss Martinez's
21 petition because the Government has not yet had the chance to remove him during the 90-day
22 period. *See* 386 F.3d at 1301 ("Because petitioners filed their habeas petitions during the 90–day
23 removal period, the district court correctly dismissed the petitions."); *see also Omidire v.*
24 *Gonzalez*, No. CV 07-1471-PHX-SMM (ECV), 2008 WL 2351043, at *4 (D. Ariz. June 5, 2008)
25 (dismissing a habeas petition where the removal period commenced while the petition was
26 pending, even though the 90-day period already expired at the time the order was filed).

27     On the other hand, the mandatory 90-day period has already expired in this case without
28 the Government effecting Martinez's removal. Section 1231(a)(2) authorizes detention for only

1   90 days. *See* 8 U.S.C. § 1231(a)(1)(A)("Except as otherwise provided in this section, when an
2   alien is ordered removed, the Attorney General *shall* remove the alien from the United States
3   within a period of 90 days (in this section referred to as the 'removal period')." (emphasis added)).
4   After 90 days, however, the Attorney General retains *discretionary* authority to detain certain
5   aliens. *See id.* § 1231(a)(6) ("An alien ordered removed who is . . . removable under section . . .
6   1227(a)(2) . . . of this title or who has been determined by the Attorney General to be a risk to the
7   community or unlikely to comply with the order of removal, may be detained beyond the removal
8   period . . . ."). In this case, 90-day removal period would have ended on November 7, 2011. In
9   *Zadvydas*, the Supreme Court concluded that a six-month period was presumptively reasonable for
10  the government to effect removal. *See* 533 U.S. at 699-701. Here, the six-month period has not
11  expired yet. Therefore, because it is still possible for the Government to remove Martinez within
12  the presumptively reasonable period, the Court must dismiss his habeas petition. *See id.* at 700-01.
13       Accordingly, if Martinez's removal period commenced on August 9, 2011 upon the Ninth
14  Circuit's denial of his motion for stay of removal, and regardless of whether his detention is
15  currently governed by § 1231(a)(2) or § 1231(a)(6), Martinez is still being detained within the
16  presumptively reasonable six-month period, and therefore his petition must be **DENIED**. *See*
17  *Zadvydas*, 533 U.S. at 700-01; *see also Khotesouvan*, 386 F.3d at 1301.

18  **III.   Detention authority under 8 U.S.C. § 1226(a)**

19       Even if Martinez's removal period has not commenced on August 9, 2011, the Court must
20  still deny as moot and dismiss his habeas petition because the bond hearing provided him with all
21  the relief that he is currently entitled to.

22       If the removal period has not commenced yet, Martinez's detention would continue to be
23  governed by § 1226(a). Section 1226(a) provides the authority for the Attorney General to
24  conduct a bond hearing and release an alien on bond or detain him if necessary to secure his
25  presence at removal. *See Casas-Castrillon*, 535 F.3d at 951. It does not, however, authorize
26  prolonged or indefinite detention without adequate procedural protections. *See id.* at 950-51.
27  "Because the prolonged detention of an alien without an individualized determination of his
28  dangerousness or flight risk would be 'constitutionally doubtful,' [the Ninth Circuit] h[e]ld that §

1226(a) must be construed as *requiring* the Attorney General to provide the alien with [a bond] hearing." *Id.* at 951. Accordingly, an alien is entitled to release on bond unless the government establishes "by clear and convincing evidence that an alien is a flight risk or a danger to the community." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). Notably, "an opportunity to contest the necessity of his detention before a neutral decisionmaker and an opportunity to appeal that determination to the BIA" is the sole remedy available to a habeas petitioner in Martinez's situation. *See Prieto-Romero*, 534 F.3d at 1065-66; *see also* 8 U.S.C. § 1226(a); *Casas-Castrillon*, 535 F.3d at 949.

In this case, the Court first rejects Martinez's argument that his removal has became indefinite because there is no indication when the Government will be able to remove him. While it is true that Martinez's detention lacks a certain end date, this uncertainty alone does not render his detention *indefinite* in the sense the Supreme Court found unconstitutionally problematic in *Zadvydas*. *See Prieto-Romero*, 534 F.3d at 1063. Martinez cannot demonstrate that "there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. In *Prieto-Romero*, the Ninth Circuit construed this language to require the alien to show that he would be unremovable *even if* the government defeated his petition for review. 534 F.3d at 1063. Martinez provides no such evidence in this case. There is no evidence, for example, that Ecuador would refuse to accept him, or that his removal would be barred by our own laws. *See Casas-Castrillon*, 535 F.3d at 949; *Prieto-Romero*, 534 F.3d at 1063. Rather, Martinez "foreseeably remains *capable* of being removed—even if it has not yet finally been determined that he *should be* removed—and so the government retains an interest in 'assuring his presence at removal.'" *See Prieto-Romero*, 534 F.3d at 1065 (quoting *Zadvydas*, 533 U.S. at 699).

Accordingly, § 1226(a) permits Martinez's continuing detention while he pursues judicial review of his administratively final order of removal. *See id.*

The Court next concludes that Martinez also had "an opportunity to contest the necessity of his detention before a neutral decisionmaker and an opportunity to appeal that determination to the BIA." *See id.* at 1065-66. In *Singh*, the Ninth Circuit clarified that due process requires the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger

the community to justify denial of bond at a *Casas* hearing." 638. F.3d at 1203. The Ninth Circuit further held that due process requires a contemporaneous record of *Casas* hearings and that, in lieu of providing a transcript, the immigration court may record *Casas* hearings and make the audio recording available for appeal upon request. All of these requirements were complied with in this case. When the IJ conducted the *Casas* hearing ordered by this Court, he explained to Martinez that Martinez would be "'entitled to release on bond unless the *government* establishes that he is a flight risk or will be a danger to the community'" and "that the government must prove that he is a danger or a flight risk by clear and convincing evidence." [Doc. No. 21-1, at 2 (citations omitted).] The IJ also made a contemporaneous record of the bond hearing. [*Id.*]

Because Martinez's detention is not indefinite and because a *Casas* bond hearing provided Martinez with the sole remedy to which he was entitled, the Court **DENIES** the Petition **AS MOOT**.

### IV.     Constitutionality of the bond hearing

The Court also rejects any contention that Martinez's bond hearing was constitutionally defective.[2] Martinez contends the IJ erred in giving significant weight to his prior convictions and in not giving sufficient weight to the evidence of his rehabilitation, such as his participation in Alcoholics Anonymous and his employment at the prison for almost two years. The Court has jurisdiction under 28 U.S.C. § 2241 to review a *Casas* bond hearing for constitutional claims and legal error.[3] *Singh*, 638 F.3d at 1200. The question for the Court is whether despite the fact that Martinez's detention is "permitted by statute because keeping him in custody *could* serve a legitimate immigration purpose," the Government has demonstrated that keeping him in custody "*actually* serve[s]" that purpose. *See Casas-Castrillon*, 535 F.3d at 949. In doing so, the Court looks at whether the IJ's decision is supported by the factors set forth in *Matter of Guerra*, 24 I. &

---

[2] It is unclear whether Martinez is indeed challenging the constitutionality of his bond hearing, or just one aspect of the IJ's determination. Accordingly, the Court's ruling on this argument should not be construed as preventing Martinez from seeking further appropriate relief regarding the constitutional or other legal issues raised by his *Casas* hearing. *See Singh*, 638 F.3d at 1200.

[3] It is unclear whether Martinez has sought BIA review of the IJ's denial of release, and whether he thus exhausted his administrative remedies. However, "[o]n habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh*, 638 F.3d at 1203 n.3. Accordingly, the Court can waive the requirement and reach the constitutional issues. *Id.*

N. Dec. 37, 40 (BIA 2006).[4] *See Prieto-Romero*, 534 F.3d at 1066. "The *Guerra* factor most pertinent to assessing dangerousness directs immigration judges to consider 'the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 24 I. & N. Dec. at 40).

Here, the IJ properly concluded that Martinez's extensive criminal record warranted a finding of dangerousness. It is true that, as Martinez argues, the criminal history alone is not always sufficient to justify denial of bond on the basis of dangerousness. *See id.* Rather, because "[e]very criminal alien who receives a Casas hearing has, presumably, been convicted of at least one crime giving rise to the removal order," "the recency and severity of the offenses must be considered." *Id.* In this case, the IJ did consider the seriousness of Martinez's crimes, their frequency, and their recency. For example, the IJ emphasized that Martinez admitted to having been sentenced to state prison five to six times, most recently in May 2009. [Doc. No. 21-1, at 5.] The IJ noted how each time that Martinez was released from prison, he would violate his parole or commit another crime, and would be sent back to prison. [*Id.*] According to the IJ:

> The respondent has not been convicted of any violent crime, per se. Even so, he is a danger to the community. He has an unrelenting involvement in crime. He has stolen and burglarized for years. Repeated imprisonment did not deter him. Five or more stints in the prison system did not dissuade him from his criminal ways. Even if it is true that he heard voices which played a role in his criminality, he still hears the voices and prefers not to take medicine. Moreover, he said the medicine does not help, though the voice no longer command [sic] the taking of items. Neither his family ties, obligations nor support dissuade him from his inexorable march down a criminal path. Neither did work nor fatherly responsibilities dissuade him. One who embarks upon a criminal course, and veers not from it after facing repeated imprisonment, is a danger to his community because he seems bent on crime, or at

---

[4] *Guerra* discusses nine factors that,

Immigration Judges may look to . . . in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate. These factors may include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

24 I. & N. Dec. at 40.

1
2
> least unable to stop himself. He is undeterred by the threat of imprisonment or consequences of imprisonment and apparently unrehabilitated by the leniency of probation. Thus, I find the respondent is a danger and cannot be released.

3 [*Id.* at 6-7.] The above reasons support the IJ's finding that the Government sustained its burden
4 of showing by clear and convincing evidence that Martinez should not be released on bond
5 because he presents a danger to the community. *See Singh*, 638 F.3d at 1203.

6 **V.    Martinez's other contentions.**

7    Martinez alleges that he is not subject to mandatory detention because he has not been
8 convicted of any aggravated felony or crime involving moral turpitude. [Doc. No. 31, at 4, 19.]
9 This, however, appears to be a substantive challenge to his administratively final order of removal.
10 "The REAL ID Act 'expressly eliminated habeas review over all final orders of removal,' and
11 provided that a petition for review in the court of appeals is the 'sole and exclusive means for
12 judicial review of an order of removal.'" *Singh*, 638 F.3d at 1210 (quoting *Singh v. Gonzalez*, 499
13 F.3d 969, 977 (9th Cir. 2007), and 8 U.S.C. § 1252(a)(5)). Although collateral relief continues to
14 be available for certain challenges post-REAL ID Act, the Court lacks jurisdiction over any
15 challenge that is "wholly intertwined" with the merits of the alien's removal order. *Id.* at 1211
16 ("Singh makes the same argument in his habeas petition as he makes in his petition for
17 review—that he is not removable because his convictions do not qualify as aggravated felonies
18 under 8 U.S.C. § 1101(a)(43)(G). Because this portion of his habeas petition 'does nothing more
19 than attack the IJ's removal order,' we lack jurisdiction to review it other than on a petition for
20 review." (internal citations omitted)). Accordingly, because entertaining Martinez's argument that
21 his convictions do not amount to an aggravated felony or crimes involving moral turpitude would
22 "contravene Congress' express intention to limit review of removal orders to 'one day in the court
23 of appeals,'" the Court lacks jurisdiction to address it. *See id.* at 1211-12 (citation omitted).
24 ///
25 ///
26 ///
27 ///
28 ///

## CONCLUSION

For the foregoing reasons, the Court **DENIES and DISMISSES** Martinez's habeas corpus petition. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

**Date:   December 13, 2011**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**